FILED

03/19/2020

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 4, 2019 Session

## IN RE ESTATE OF GLENN ALLEN ATKINS

Appeal from the Chancery Court for Union County
No. 1740     Elizabeth C. Asbury,  Chancellor

### No. E2018-02018-COA-R3-CV

In this estate proceeding, the original petitioner, an adult child of the decedent, filed a petition for letters of administration, averring that the decedent had died intestate.  The trial court initially granted the petition, designating the petitioner as the personal representative of the decedent's estate.  The decedent's surviving spouse subsequently filed a petition requesting the trial court's acceptance into probate of a holographic will, purportedly executed by the decedent, which the surviving spouse presented to the court.  The original petitioner and another adult child of the decedent then filed motions contesting the validity of the holographic will.  Following a bench trial, the trial court found the holographic will to be valid, accepted the will into probate, and named the surviving spouse as the personal representative of the decedent's estate.  The adult children contesting the holographic will have appealed.  Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and CARMA DENNIS MCGEE, JJ., joined.

Tiffany M. Johns, Franklin, Tennessee, for the appellants, Tessa Atkins Warren and Eva Atkins.

David Hall Stanifer and Noah Joseph Patton, Tazewell, Tennessee, for the appellee, Connie Cook Morris Gredig Atkins.

# OPINION

## I. Factual and Procedural Background

The decedent, Glenn Allen Atkins ("Decedent"), died on April 1, 2017, at seventy years of age. He was survived by his wife, Connie Cook Morris Gredig Atkins ("Wife"); three adult children: Tessa Atkins Warren, Eva Atkins, and James Atkins; and two adult stepsons: Randall Gredig and Stanley Gredig. On July 17, 2017, Ms. Warren filed a petition for letters of administration, averring that "[a] search [had] been made for a will left by the decedent, but no such document [had] been found." Ms. Warren requested in the petition that she be named personal representative, and she concomitantly filed affidavits executed by Eva Atkins and James Atkins, in which they each respectively requested Ms. Warren's appointment as personal representative of Decedent's estate.[1]

Wife filed an answer to Ms. Warren's petition on August 10, 2017, denying that Decedent had died intestate and objecting to the appointment of Ms. Warren as personal representative. Wife attached to her answer a handwritten, three-page document, which she asserted was Decedent's last will and testament ("Holographic Will"). The Holographic Will bears the date of September 17, 2004, at the top of the first page and at the bottom of the bequests beside a signature stating, "Glenn Atkins," with no middle initial. Below Decedent's purported signature, the Holographic Will bears the signature of Decedent's sister, Martha Jean Carter, stating directly above the signature: "I swear on this day the above Glenn Atkins signed this document in my presence," with "17 Sept. 2004" written under Ms. Carter's signature. The body of the Holographic Will states as follows:

> Last Will and Testament of Glenn Allen Atkins. Glenns Executor is Randall Gredig and Martha Jean Carter.
>
> All property and moneys will be left to my wife Connie Jean Atkins, in case of my death only, except my personal effects like guns, pictures, coins, life Ins. . These go to Eva, Tessa, and James Atkins.
>
> In case of both Glenn & Connie death together, the content will be divided. The house content will go the Randall & Stanley accept the Atkins bedroom suits, and the Aunt Iva Desk, goes to Eva, Tessa, & James Atkins.
>
> Farm equipment, cattle, and all vehicles are to be offered first to be sold to one of five children and the money be divided equally among the

---

[1] Because several individuals involved in this case share surnames, we will identify these individuals by both first and last name when necessary for clarity. No disrespect is intended.

five children. If not bought by the children, then sold and divided among the five children. Randall, Stanley, Eva, Tessa, & James.

The house and land (8.9 acres) and 28 acres bought later shall be appraised by 2 appraisals and may be sold to one of Glenn 3 children at the high appraisal. If not sold to one of Glenn children then one of Connie children at the same price. If not bought by any children then it be sold the high price and divided this way. Eva Atkins gets 25%, Tessa Atkins gets 25%, James Atkins gets 25%, and Randall & Stanley get 25%.

Any and all bills & debts including burial fees, for Glenn and Connie Atkins will be deleted from money made from sale of vehicles, farm equipment and cattle. If this doesn't cover the cost, then the money come from the sale of house & land before divided among five children.

Wife filed a petition on August 10, 2017, averring that she was "in possession of the Last Will and Testament duly written by [Decedent]" and offering the Holographic Will for probate. Wife requested that she be appointed the personal representative of the Estate "in lieu of the designated co-personal designees under the Last Will and Testament of the decedent," which had been named in the Holographic Will as Ms. Carter and Randall Gredig. Wife attached two affidavits, one executed by James L. Dixon and one executed by Brenda Sweet, each of whom respectively swore that he or she was familiar with Decedent's handwriting and that the Holographic Will had been "fully written and signed" by Decedent. The trial court subsequently entered the Holographic Will into the court's Will Book.

On October 11, 2017, Ms. Warren, acting through attorney K. David Myers, filed a motion requesting that the trial court certify a will contest to determine the validity of the Holographic Will and "all issues" related it. The trial court entered an order on October 18, 2017, entering the will contest into the court's minutes and setting the matter for trial. Eva Atkins subsequently filed a *pro se* motion to certify the will contest as to the Holographic Will. Following a continuance and upon Ms. Warren's motion, the trial court entered an order substituting attorney Anthony M. Avery as counsel for Ms. Warren on February 9, 2018. Attorney Avery subsequently filed a motion on behalf of both Ms. Warren and Eva Atkins (collectively, "Contestants"), requesting that the case be set for trial.

The trial court conducted a bench trial on September 12, 2018, during which the court heard testimony from Ms. Carter and Randall Gredig, both of whom testified that they were familiar with Decedent's handwriting and opined that Decedent had signed the Holographic Will. Ms. Carter, who testified that she had transcribed minutes from

Decedent's handwriting from local historical society meetings, confirmed that she had signed the Holographic Will as a witness. According to the trial court's statement of the evidence, Ms. Carter also testified that "she did not see [Decedent] actually place his signature on the document but he said it was his signature and she believed him."

The trial court entered an order on October 9, 2018, finding that the Holographic Will had been "duly executed and in the handwriting of [Decedent]" pursuant to Tennessee Code Annotated § 32-1-105. The court directed letters testamentary to be issued upon Wife's request made within the petition to probate the Holographic Will and reserved "all other matters" "pending any further hearing in this cause." Contestants filed a timely notice of appeal from the October 9, 2018 order. The record reflects that upon Wife's subsequent "Petition for Testate Estate," the trial court entered an "Order of Probate" on January 30, 2019, directing that the Holographic Will be admitted to probate and that letters testamentary be issued to Wife as the personal representative of Decedent's estate.

We note that no transcript of the trial proceedings is in the record on appeal. Pursuant to Tennessee Rule of Appellate Procedure 24(c), Contestants filed a statement of the evidence on January 7, 2019.[2] Wife then filed her own statement of the evidence. *See* Tenn. R. App. P. 24(c) (providing that the appellee may file objections to the statement of the evidence as filed by the appellant). Upon consideration of both statements of the evidence submitted by the parties, the trial court entered a "Statement of the Court Pursuant to Tennessee Rule of Appellate Procedure 24(c) and (e)" on February 20, 2019, primarily setting forth the trial court's summary of the testimony presented, respectively, by Ms. Carter and Randall Gredig. Tennessee Rule of Appellate Procedure 24(e) provides in pertinent part:

> Any differences regarding whether the record accurately discloses what occurred in the trial court shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court. Absent extraordinary circumstances, the determination of the trial court is conclusive. If necessary, the appellate or trial court may direct that a supplemental record be certified and transmitted.

Upon Contestants' subsequent motion to supplement the record with the parties' competing statements of the evidence, this Court entered an order denying the motion, concluding:

---

[2] Subsequent to the filing of Contestants' statement of the evidence, Contestants' appellate counsel filed a notice of appearance on Contestants' behalf.

It is clear that the Trial Court reviewed the differences in the statements of the evidence prepared by the parties and determined that neither accurately disclosed what occurred in the trial court, and as a result, prepared a statement of the evidence that did accurately disclose what occurred in the trial court.

Contestants have attached the parties' competing statements of the evidence as an "exhibit" to their appellate brief. We emphasize that having previously denied supplementation of the record with the parties' statements of the evidence, this Court will consider solely the trial court's statement of the evidence as an accurate summary of what occurred during trial. *See* Tenn. R. App. P. 24(e) ("Absent extraordinary circumstances, the determination of the trial court is conclusive."); *Bellamy v. Cracker Barrel Old Country Store, Inc.*, 302 S.W.3d 278, 281 (Tenn. 2009) ("Rule 24(e) expressly requires that the differences '*shall be submitted to and settled by the trial court regardless of whether the record has been transmitted to the appellate court*'") (quoting Tenn. R. App. P. 24(e) (emphasis in *Bellamy*))).

## II.  Issues Presented

Contestants present two issues on appeal, which we have restated as follows:

1.  Whether the trial court erred by validating the Holographic Will pursuant to Tennessee Code Annotated § 32-1-105.

2.  Whether the trial court erred by not seeking to determine the intent of Decedent.

## III.  Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law, including those related to construction of a will, *de novo* with no presumption of correctness. *See In re Estate of Milam*, 181 S.W.3d 344, 353 (Tenn. Ct. App. 2005); *In re Estate of Schubert*, No. E2014-01754-COA-R3-CV, 2015 WL 4272192, at *4 (Tenn. Ct. App. July 15, 2015). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

5

To the extent that Contestants challenge the trial court's decisions regarding the admissibility of evidence, such decisions are reviewed according to an abuse of discretion standard. *See In re Estate of Link*, 542 S.W.3d 438, 455 (Tenn. Ct. App. 2017). "[A] trial court will be found to have 'abused its discretion' only when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *In re Estate of Greenamyre*, 219 S.W.3d 877, 886 (Tenn. Ct. App. 2005) (internal citations omitted).

## IV. Holographic Will

Contestants assert that the trial court erred by validating the Holographic Will based on the testimony of Ms. Carter and Randall Gredig concerning Decedent's handwriting. Contestants also specifically argue that the trial court improperly declined to consider or give sufficient weight to (1) exhibits presented during trial reflecting Decedent's purported "habit" of using his middle initial in his signature; (2) the deposition testimony of James L. Dixon, presented as an exhibit during trial, and the deposition testimony of Randall Gredig, who testified during trial; and (3) the alleged fact that Ms. Carter and Randall Gredig were not disinterested witnesses. Contestants also posit that the trial court erred by considering Ms. Carter's and Randall Gredig's respective testimonies regarding Decedent's signature as evidence of Decedent's handwriting. Upon careful review of the record and applicable authorities, we conclude that the evidence does not preponderate against the trial court's finding that the Holographic Will was a valid testamentary instrument. We will address each of Contestants' arguments in turn.

Regarding holographic wills, Tennessee Code Annotated § 32-1-105 (2015) provides:

> No witness to a holographic will is necessary, but the signature and all its material provisions must be in the handwriting of the testator and the testator's handwriting must be proved by two (2) witnesses.

*See In re Estate of Meade*, 156 S.W.3d 841, 844 (Tenn. Ct. App. 2004) ("When the statutory requirements are met, a holographic will is of the same dignity as a will attested by subscribing witnesses.").

As to the burden of proof in a will contest, this Court has elucidated:

> The proponents of the will have the initial burden of proving that the will was duly executed. *See In re Estate of Elam,* 738 S.W.2d 169, 171

6

(Tenn. 1987). This may be accomplished using the testimony of living witnesses and by showing that the will complies with all formalities of law. *See In re Estate of King,* 760 S.W.2d 208, 210 (Tenn. 1988). Proof of due execution makes out a prima facie case of the will's validity because it gives rise to a presumption that the testator was capable of making a will. *Curry v. Bridges,* 45 Tenn. App. 395, 407, 325 S.W.2d 87, 92 (1959); *Needham v. Doyle,* 39 Tenn. App. 597, 622, 286 S.W.2d 601, 612 (1955). Accordingly, the burden of proof then shifts to the contestant to prove the will is invalid for some reason. *Green v. Higdon,* 870 S.W.2d [513,] 520 [(Tenn. Ct. App. 1993)]; *Taliaferro v. Green,* 622 S.W.2d 829, 835 (Tenn. Ct. App. 1981).

*In re Estate of Eden*, 99 S.W.3d 82, 88 (Tenn. Ct. App. 1995).

In its order finding the Holographic Will to be valid, the trial court stated in pertinent part:

IT IS . . . ADJUDGED AND DECREED that the Court finds that the holographic will was duly executed and in the handwriting of the Testator, [Decedent], pursuant to *T.C.A.* [§] *32-1-105*.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said holographic will has been authenticated by two (2) witnesses, who were properly before the Court and relied upon other writings and set forth their opinion consistent that the same is the handwriting of the decedent.

In its subsequent "Statement of the Court," the trial court found that upon its review of the parties' statements of the evidence, it "needed to evaluate" the testimony presented by the two witnesses upon which the court found the Holographic Will to be authenticated. In its statement, the trial court summarized the testimony of these two witnesses as follows:

According to the notes taken by this Court, Randall Gredig is the son of [Wife]/step-son of [Decedent]. He described a good relationship with his step-father and said "considered him my father[."] He testified that he was familiar with [Decedent's] handwriting and that, in his opinion, it is his handwriting on the document in question. On cross-examination he stated that he had seen [Decedent] sign his signature many times, sometimes in cursive and sometimes in print. He specifically said that at times he

7

sign[ed] his tithe check Glenn A and at times Glenn. He did see the document in question prior to the overseas trip.[3]

According to the notes of this Court, Martha Jean Carter testified that she was the sister of the Decedent. She testified that she did not see him actually place his signature on the document but he said it was his signature and she believed him. She has seen him write in cursive and in print. She has transcribed minutes from his handwriting for the Historical Society. She did place her signature on the document in question.

First, Contestants argue that the trial court failed to properly consider several documents presented as exhibits during trial upon which Decedent had signed his name with his middle initial included. They assert that, pursuant to Tennessee Rule of Evidence 406, these exhibits demonstrated that Decedent's habit was to use his middle initial when signing his name. Contestants thereby postulate that the trial court should not have found Decedent's purported signature on the Holographic Will to be authentic because the signature does not include Decedent's middle initial. Presented as exhibits in this regard were the following documents that Decedent had signed with his middle initial included: bank records, including a signature card, account contract, and cancelled checks; the September 2015 minutes for the Union County Historical Society, wherein Decedent signed his name as the recorder; Decedent's September 2005 appointment of a health care agent; a name badge used in Decedent's employment; Decedent's passport, issued in 2004; and a warranty deed executed in 1995.

Concerning the habit of a person, Tennessee Rule of Evidence 406 provides in pertinent part:

(a)     Evidence of the habit of a person . . . whether corroborated or not and regardless of the presence of eye-witnesses, is relevant to prove that the conduct of the person . . . on a particular occasion was in conformity with the habit . . . .

(b)     A habit is a regular response to a repeated specific situation.

We note that in this instance, Contestants sought to utilize habit evidence to prove the inverse of what is provided in the rule, meaning that instead of presenting this evidence to demonstrate that Decedent had included his middle initial in his signature on

---

[3] Although not in the record before us, Wife has not disputed Contestants' statement on appeal that Decedent and Wife were preparing to leave on an overseas trip when the Holographic Will was drafted. We find no merit in Contestants' argument before this Court that the situation in which Decedent's Holographic Will was drafted somehow rendered it a temporary document.

8

a particular occasion, Contestants sought to demonstrate that Decedent <u>never</u> would have signed a document without including his middle initial. Contestants cite to no authority for this inverse use of the rule. Moreover, "courts recognize the danger of such evidence, [regarding custom or habit] and do not look on it with favor; and, to be admissible, its relevancy and probative value must clearly appear." *Bridges v. CSX Transp., Inc.*, 845 S.W.2d 760, 765 (Tenn. Ct. App. 1992) (quoting *Middle Tenn. Elec. Membership Corp. v. Barrett,* 410 S.W.2d 914, 918 (Tenn. Ct. App. 1966)) (in turn quoting 31A C.J.S. *Evidence* § 180, p. 458).

In its Tennessee Rule of Appellate Procedure 24(e) Statement of the Court, the trial court noted that Randall Gredig "specifically said that at times [Decedent] sign[ed] his tithe check Glenn A and at times Glenn." The trial court's inclusion of this point indicates that the court considered Contestants' argument that the absence of the middle initial meant that the signature on the Holographic Will did not belong to Decedent. The court clearly credited Randall Gredig's testimony in this regard. *See Morrison*, 338 S.W.3d at 426 ("When credibility and weight to be given testimony are involved, considerable deference must be afforded to the trial court when the trial judge had the opportunity to observe the witness' demeanor and to hear in-court testimony."). Considering also that the selection of documents with Decedent's signature that were presented by Contestants could only be a fraction of the documents that Decedent would have signed over his lifetime, we determine that the trial court did not err in finding that Randall Gredig's testimony concerning Decedent's use of the middle initial was more probative than Contestants' attempt to establish habit evidence through an inverse application of Tennessee Rule of Evidence 406.

Second, regarding Decedent's alleged use of his middle initial in his signature, Contestants assert that the trial court failed to properly consider the deposition testimony of James L. Dixon, which was presented as an exhibit during trial. Mr. Dixon did not testify at trial. Contestants also assert that the trial court erred by not properly considering Randall Gredig's deposition testimony in addition to his trial testimony.

The use of depositions in court proceedings is governed by Tennessee Rule of Civil Procedure 32.01, which provides in relevant part:

> At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Tennessee Rules of Evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof in accordance with any of the following provisions:

(1)     Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.

* * *

(3)     The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds that the witness is "unavailable" as defined by Tennessee Rule of Evidence 804(a).

*See Estate of Brock ex rel. Yadon v. Rist*, 63 S.W.3d 729, 733 (Tenn. Ct. App. 2001). In contrast to our deferential review of the trial court's determinations of witness credibility during live testimony, we review the trial court's determinations regarding witness credibility during deposition testimony *de novo* upon the record with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Lambdin v. Goodyear Tire & Rubber Co.*, 468 S.W.3d 1, 10 (Tenn. 2015).

Although it is not entirely clear from the record before us, the trial court appears to have found Mr. Dixon's deposition to be admissible as one offered from an unavailable witness under Rule 32.01(3). Mr. Dixon initially executed an affidavit on behalf of the Holographic Will's validity, attesting that he was familiar with Decedent's handwriting and that the Will was "fully written and signed" by Decedent. During his deposition, Mr. Dixon testified that he had served on a "cemetery committee" with Decedent on behalf of the church they both attended and that he had often observed Decedent authorizing checks in payment for services needed at the cemetery. When questioned regarding whether Decedent signed his name with his middle initial or middle name, Mr. Dixon stated:

I . . . you know I'm sorry but I never did . . . you know, you're standing in front of somebody when they're signing . . . I didn't pay a whole lot of attention. But I think it was Glenn A., I think.

Upon our *de novo* review and contrary to Contestants' assertion on appeal, we do not find that this statement from Mr. Dixon constitutes conclusive evidence that Decedent always used his middle initial when signing documents. We discern no error in the weight given by the trial court to Mr. Dixon's deposition testimony in light of the live witness testimony presented at trial regarding Decedent's handwriting.

Contestants also argue that the trial court "failed to properly consider [Randall] Gredig's deposition testimony in an effort to determine whether [Randall] Gredig could actually prove with satisfactory evidence that the handwriting comprising the

10

[Holographic Will] is indeed that of Decedent[.]" However, as Wife points out, Randall Gredig testified during trial, and his deposition is not part of the record on appeal. Pursuant to Rule 32.01(1), Contestants could have used the deposition at trial "for the purpose of contradicting or impeaching the testimony of deponent as a witness." The record does not indicate whether Contestants did so, but in any case, the trial court properly considered Randall Gredig's live trial testimony. Contestants' argument concerning Randall Gredig's deposition is unavailing.

Third, Contestants contend that the trial court erred by failing to consider that Randall Gredig and Ms. Carter were allegedly not disinterested witnesses. As to Randall Gredig, this allegation is based on his status as Wife's son and Contestants' assumption that he would eventually be a beneficiary of his mother's estate. As to Ms. Carter, this assertion is based on facts not in the record concerning real property allegedly owned by Ms. Carter. During oral argument before this Court, Contestants' counsel acknowledged that Tennessee Code Annotated § 32-1-105 does not require that the witnesses to the testator's handwriting authenticating a holographic will be disinterested parties as to the testator's estate. Inasmuch as Contestants have essentially posited a requirement that does not exist in the statute, we determine this argument to be unavailing as well.

Finally, Contestants posit that the trial court erred by considering Ms. Carter's and Randall Gredig's respective testimonies regarding Decedent's signature as evidence of Decedent's handwriting. Pursuant to Tennessee Code Annotated § 32-1-105, in order for a Holographic Will to be validated, "the signature and all its material provisions must be in the handwriting of the testator." *See In re Estate of Meade*, 156 S.W.3d at 844 ("The statutory requirements for a holographic will are that the document's provisions be entirely in the testator's handwriting, and authenticated by 2 witnesses." (citing Tenn. Code Ann. § 32-1-105)). Contestants ask this Court to distinguish between testimony as to knowledge of a testator's signature versus testimony as to knowledge of a testator's handwriting. They essentially argue that even if the witnesses' testimonies were sufficient to prove Decedent's signature on the Holographic Will, they were insufficient to prove Decedent's handwriting in the material provisions of the document.

The trial court found in its "Statement of the Court" that Randall Gredig "testified that he was familiar with [Decedent's] <u>handwriting</u> and that, in his opinion, it is his <u>handwriting</u> on the document in question." (Emphasis added.) In addition, the court found that Ms. Carter had testified that she was familiar with Decedent's <u>handwriting</u> not only because she was his sister but also because she had "seen [Decedent] write in cursive and in print" and had "transcribed minutes from his <u>handwriting</u> for the Historical Society." (Emphasis added.) Moreover, no indication exists in the record that Contestants presented any evidence to refute Wife's claim that the Holographic Will was

11

in Decedent's handwriting other than the exhibits Contestants presented with Decedent's middle initial included in his signature.

Upon careful review, we determine that the evidence does not preponderate against the trial court's finding that Wife met her initial burden as the proponent of the Holographic Will by presenting the testimony of two witnesses the court found to be credible in proving Decedent's handwriting in the material provisions and signature. *See* Tenn. Code Ann. § 32-1-105. We further determine that the evidence does not preponderate against the trial court's finding that Contestants failed to carry their burden of proof to invalidate the Holographic Will. *See In re Estate of Eden*, 99 S.W.3d at 88 (explaining that once a will's proponent has met the "initial burden of proving that the will was duly executed," "the burden of proof then shifts to the contestant to prove the will is invalid for some reason"). The trial court did not err by finding in favor of the Holographic Will's validity.

## V. Construction of Holographic Will

Contestants also contend that the trial court erred by declining to "initiate[] a construction" of the Holographic Will based on what Contestants assert is a latent ambiguity in Decedent's categorization of a life insurance policy with "personal effects." Wife contends that the reference to Decedent's life insurance policy is not a latent ambiguity and that even if this Court were to find it so, the ambiguity would be cured by excluding the life insurance policy from Decedent's bequest of personal effects. The record contains no indication that either Contestants or Wife raised an issue of will construction before the trial court. *See In re Estate of Eden*, 99 S.W.3d at 87 (explaining that will contests and will constructions are two different types of proceedings although they may be presented in the same case). We determine that any question of the Holographic Will's construction was not yet before the trial court when the court reserved "all other matters" "pending further hearing" in its October 9, 2018 order. We therefore determine that this issue is not ripe for appellate review.

Our determination in this regard does beg the question of whether the October 9, 2018 order is a final order that is itself ripe for appellate review. Generally, an order that does not adjudicate all of the claims between all of the parties is "subject to revision at any time before entry of a final judgment" and is not appealable as of right. *See* Tenn. R. App. P. 3(a); *see also In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) ("A final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.'") (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)). However, this Court has recognized that when an intermediate order entered in a probate court proceeding resolves a discrete issue, the final judgment rule may be suspended. *See In re Estate of Goza*, No. W2013-02240-COA-R3-CV, 2014

12

WL 7246509, at *4 (Tenn. Ct. App. Dec. 19, 2014) ("[W]e recognize the difficulty of applying the final judgment rule of [Tennessee] Rule [of Civil Procedure] 3 to probate proceedings, which often contain multiple intermediate orders that are final with regard to certain discrete issues.").

In this case, we have concluded that the trial court's order validating the Holographic Will was a final order subject to appeal. *See Conservatorship of Acree v. Acree,* No. M2011-02699-COA-R3-CV, 2012 WL 5873578, at *4 (Tenn. Ct. App. Nov. 20, 2012) ("The Supreme Court has previously explained that orders construing a will, rejecting a will, or other such orders filed in an estate are final orders subject to appeal, as it would present 'substantial burdens' on the courts and litigants to make such appeals await the closing of an estate, as distributed assets could be difficult to recover." (citing *In re Estate of Ridley,* 270 S.W.3d 37 (Tenn. 2008))). However, we further conclude that Contestants' issue concerning construction of the Holographic Will is not properly before this Court on appeal.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's judgment validating the Holographic Will. We remand to the trial court for enforcement of the judgment, further proceedings consistent with this opinion, and collection of costs below. Costs on appeal are taxed to the appellants, Tessa Atkins Warren and Eva Atkins.

_____
THOMAS R. FRIERSON, II, JUDGE

13